McMILLAN, APPELLEE, *v.* KRANTZ ET AL., APPELLANTS.

(No. 806—Decided December 20, 1952.)

*Messrs. Chalfant & Smith* and *Messrs. Seikel & Seikel,* for appellee.

*Messrs. Day, Cope, Ketterer, Raley & Wright* and *Mr. James E. Patrick,* for appellants.

PUTNAM, J. This case originated in the Common Pleas Court of Tuscarawas County as an action for statutory partition. It involves the construction of Section 10503-5, General Code, the so-called half-and-half statute, and what the phrase therein, "identical real estate," means. The trial court held that the phrase, "identical real estate," comprised the property in question, granted the prayer of the petition; and, consequently, held that the property was the identical real estate devised to the intestate decedent, and that the property descended under Section 10503-5, General Code.

The defendants, appellants herein, contend that this real estate is not the "identical real estate" as contemplated in that statute. The property in question is lot No. 129 in the city of Dover and the building thereon. This appeal on questions of law and fact results from the decision of the trial court that the property was the identical property. The case is submitted to this court on the testimony adduced in the court below, together with the additional tendered evidence of leases executed by Annie B. Deis during her lifetime, and the objections interposed thereto in the trial court. This court holds that the objections were not well taken, and that the tendered leases are competent evidence to prove defendants' theory of the case.

Section 10503-5, General Code, in its material part, is as follows:

"When a relict of a deceased husband or wife dies intestate and without issue, possessed of *identical real estate* or *personal property* which came to such relict

from any deceased spouse, by deed of gift, devise, bequest or descent, or by virtue of an election to take under the statute of descent and distribution, then such estate, real and personal, except one-half thereof which shall pass to and vest in the surviving spouse, if any, of such relict, shall pass to and vest in the children of the deceased spouse from whom such real estate or personal property came, or their lineal descendants, per stirpes." (Emphasis ours.)

The facts, as shown by the pleadings and the evidence, are not in dispute, and are that the plaintiff and certain of the defendants are the heirs at law of one Andrew Deis, who died testate on April 19, 1942, leaving his widow, Annie B. Deis, surviving him; and that at the time of his death he owned lot No. 129 in the city of Dover in fee simple.

Item 3 of the will of Andrew Deis provided as follows:

"I give and devise to my said wife, Annie B. Deis, provided she survives me, lot number one hundred and twenty-nine (129) in said city of Dover, Ohio, and being the lot upon which is located the building known as the 'Lenhart Block,' together with the appurtenances thereunto belonging, to her absolutely and in fee simple."

Annie B. Deis came into the possession of this property under this provision of the will, and she never alienated the same or changed the title thereto. She enjoyed the possession and the fruits of this property for about eight years. During that time she made repairs upon the property and rearranged it so as to make it a more valuable rental business property. This involved a considerable expenditure of money. Annie B. Deis died intestate on July 9, 1950, without spouse or lineal descendants surviving her, and at her death she was still the owner of lot No. 129, the title

thereto never having been changed. William L. Belknap and the other defendants are the brothers and sisters of Annie B. Deis and her sole heirs at law. They claim the entire property, asserting that it does not descend under the half-and-half statute because the property is not the identical property devised to Annie B. Deis, by reason of certain changes and improvements in the building.

The uncontradicted evidence shows that Annie B. Deis, during the eight years of her enjoyment of this property, made substantial necessary repairs and improvements thereon. The roof leaked and it had to be replaced with a new covering; the heating equipment was inadequate and worn-out, and had to be replaced with new furnaces. New plumbing, windows, toilet facilities, flooring in certain places, and window repairs were necessary, and rearrangement of rooms on the second floor and other changes to facilitate the rental of a business block under evolving conditions were made at considerable expense. Where these funds came from is not disclosed by the evidence, nor do we think that is material.

It is the claim of the defendants that these changes resulting from the work done on this building constituted such an alteration of the property as to change its course of descent. The defendants concede that ordinary repairs and upkeep would not do so. Just how many of the changes proven herein would constitute ordinary repairs is not conceded. Certainly, replacing a leaky roof and a worn-out heating system would be vital maintenance. Just how much rearrangement would be justified to make this business block rentable under changing conditions might be a matter of dispute.

However, we do not consider these matters decisive. All the authorities cited by the defendants have to do

with the question of personal property under this statute, viz, Section 10503-5, General Code. In interpreting this statute we must realize that the terms, "real estate," "interest," "property," and, "title," have many different meanings, depending on statutory definitions, the context in which they are used, and the common law. The determination of the meaning of this phrase as used in Section 10503-5, General Code, is the first question we have before us.

A discussion of the various meanings of those terms is found in 73 Corpus Juris Secundum, 157, Section 7 *et seq.*, under the title of property; also in 31 Corpus Juris Secundum, 9, under the title of estates. We refer also to 36 Words and Phrases, 163, and 41 Words and Phrases, 665. We have no desire to attempt a definitive exposition of the law of real property or the terms used therein because that would be futile, as a casual inquiry shows that the varied use of the words with reference to real property is unlimited, not positive, and depends upon the context and certain statutory definitions.

The basis of the defendants' argument herein is that the phrase, "identical real estate and personal property," should be construed with reference to the "value" or the "interest" therein. In this connection, two main points are made by the defendants, first, that the value of the building on the land in question was enhanced by improvements, and, second, that the interest of Annie B. Deis was changed by reason of the change in the leases thereof.

None of the cases cited by the defendants, all which have to do with personal property, bear out either contention. Running through all those cases, without citing them in detail, it is our judgment that the fundamental idea is that it is the "corpus" of the property, and not the value or the interests therein,

which determines the question as to whether the property is "identical." This proposition is borne out by the decisions of the appellate courts of this state. Exchanging a bond for another bond, although the latter is of equal value, has been held to change the corpus of the property. The depositing in a bank of funds constituting the original property, which creates a debtor and creditor relationship through a commingling of funds, also changes the corpus, although not the value. The bonds might be identical although depreciated 50 per cent, or enhanced 50 per cent due to changed conditions. Likewise, real estate on which nothing had been done, due to lack of repairs, might become absolutely less valuable. On the other hand,. due to changed economic conditions, such as prevailed between 1934 and 1948, it might increase in value three fold, as much real estate did in that period. Consequently, it is our judgment that the value of the property has nothing to do with the interpretation of the word, "identical."

The second proposition has to do with the evaluation of the argument of the defendants as to their concept of the term, "real estate," as being any interest in lands, tenements or heriditaments of a freehold nature. The defendants are claiming that, under the statute of descent, the definition given under other circumstances should prevail in this case. Their arguments and briefs have emphasized this point and we are frank to admit that if their interpretation of the statute is correct, they might have an argument. This is in view of the fact of the elasticity of the definitions of the terms involved.

It is our judgment, however, that in connection with this statute, the definition of real estate, among all the other definitions thereof, is to be determined in ac-

cordance with the definition set forth in 73 Corpus Juris Secundum, 160, Section 7, which is:

"As the corpus of estates or interests, the terms 'real estate' and 'real property' may be construed like the term 'lands.' In this sense these terms include the surface of the earth, and things of a permanent nature attached thereto, improvements of a permanent character placed on it, the space above the surface of the earth, and minerals, oils, and gases found below the surface."

In our judgment, this proposition is answered by the Supreme Court of Ohio in the case of *Patterson* v. *Lamson,* 45 Ohio St., 77, 12 N. E., 531, in which it is held in the first paragraph of the syllabus:

"Under the statutes of descent and distribution, the course of descent of *real estate* is to be controlled by the *legal title*." (Emphasis added.)

In the case of *Russell* v. *Bruer*, 64 Ohio St., 1, 59 N. E., 740, the first paragraph of the syllabus is:

"The course of descent of *real property* is controlled by the legal title." (Emphasis ours.)

*Russell* v. *Bruer* was cited with approval in the case of *Wilson* v. *Eccles,* 119 Ohio St., 184, 162 N. E., 797. It is to be noted in the above cases that the words, real property, and the words, real estate, are used synonymously, and yet the determinative fact is the *legal title*. This gives this court more reason to believe that it is the corpus rather than the interest which controls in this case. In 41 Words and Phrases, 665, "title" is defined as the lawful cause or ground of possessing that which is ours. The word, "interest," is a much broader term and has a different connotation. The Supreme Court did not say that the course of descent was controlled by an equitable interest, or a legal interest, but by the "legal title." One may have the identical title in fee simple derived from a given

person by a warranty deed of a certain date, or by a certain will, or by a patent from the government, and hold the same for 50 years and it remains the identical title. However, his equity or interest in the property might be constantly fluctuating. He might mortgage it and gradually pay off the mortgage. Tax and other liens might accumulate and recede.

Likewise, the value could change. If it were 40 acres of land near a city, its value for allotment purposes might make it a bonanza. A fine residence property in a city could be engulfed by a shifting population and become practically valueless. Yes, but the defendants say it must be a voluntary act of the owner. The voluntary act of the owner in doing what? They answer, changing the identity. The identity of what? We answer, it is the identity of the title of the corpus and not the interest or equity. Suppose under the cases cited under this section, involving personal property, one would inherit 50 United States bonds worth one hundred dollars each and then sell 25 of them. Could it be argued that the remaining 25 would not be the identical property inherited? Certainly not. So, likewise, suppose one inherited 160 acres of land and sold off 40 acres; could it be argued that under this section the 120 acres remaining would not be the identical real estate inherited? Again the answer is no. Certainly, not all of it would remain, but what did remain would be the identical property as far as the title thereto is concerned. Neither, as we see it, would it make any difference if a farmer put up a new hog house or, after the rural electric program came along, put in a new water system for his house. All became fixtures pertaining to the original land which was derived through the original title.

The Supreme Court in the *Wilson case, supra*, has repudiated the theory of tracing funds originally in-

herited or the accumulations thereof as leading to confusion. The same court has said in no uncertain terms that *real estate* descends according to *legal title*. It is apparent to us that the term, real estate, as here used, is synonymous with land or corpus. Any other interpretation would, as above indicated, lead to worse confusion. If funds cannot be traced, how can value or interest? The only practical rule is "title," otherwise the statute might as well be repealed.

Consequently, we hold, first, that the repairs and alterations made in the instant property were necessary to maintenance, and that irrespective of the sources of the funds used therefor, the improvements became a part of the land; and, second, that this real estate or land is the identical real estate willed to Annie B. Deis by Andrew Deis, because the title thereto was not changed by Annie B. Deis during her lifetime.

It follows that a decree is made herein similar to the one made in the court below.

*Judgment accordingly.*

McCLINTOCK, P. J., and MONTGOMERY, J., concur.