SLISZ, ADMX., *v.* SLISZ, ET AL.

(No. 655203—Decided June 5, 1965.)

*Helen F. Kujawski*, for plaintiff.
*Mr. Francis Michael Sloan*, for defendants.

BARTUNEK, J. This cause was originally presented as a petition to determine heirship filed by Rose Slisz, Administratrix of the Estate of Andrew A. Slisz, deceased. After appropriate filings by parties in interest, the issues were joined and a hearing was had before the Hon. Willis T. Barber, Referee. Subsequently, an appeal was taken from the decision of the referee, and the matter is now before this court.

The undisputed facts are that Andrew A. Slisz married Helen Radka, a widow and mother of four children, in 1920. On August 10, 1938, Andrew and his wife Helen purchased certain property located at 3563 Scranton Road in Cleveland, Ohio. At that time, each acquired an equal undivided one-half interest in said property.

On April 11, 1950, Helen Radka Slisz died, devising her undivided one-half interest in the Scranton Road property to her husband, Andrew. Since the other one-half interest in the property had previously been in his name, Andrew then became the sole owner of the entire interest in the property.

In 1953, Andrew Slisz married Rose, and on March 14, 1963, he conveyed to his wife, Rose Slisz, by quit claim deed, an undivided one-half interest in the Scranton Road property. On July 19, 1963, Andrew Slisz died, possessed of an undivided one-half interest in the Scranton Road property, and without issue. He left a will devising his interest in the Scranton Road property to his first wife, Helen Radka Slisz, who had been dead for 13 years. Thus, that devise failed, and Andrew Slisz died intestate.

Rose Slisz contended that the undivided one-half interest in the Scranton Road property of which her husband died seized should descend to her, as surviving spouse, by virtue of the statute of descent and distribution (Section 2105.06 Revised Code).

Mary Radka Jackie, Casimer Radka, and Leo Radka, the three living children of Helen Radka Slisz, through her first

marriage, one of her children having since died without spouse or issue, claimed that one-half of the undivided one-half interest in the Scranton Road property should descend to them by virtue of the so-called half-and-half statute (Section 2105.10 Revised Code).

Rose Slisz vigorously denied any application of the half-and-half statute and further contended that even if it did apply, all four children of Helen Radka Slisz signed waivers of their rights under this statute shortly after their mother, Helen Radka Slisz died in 1950.

Referee Barber found:

1. That Andrew Slisz died intestate, without issue, and possessed of an interest in the Scranton Road property that was identical to the interest in that property he received from his deceased wife, Helen Radka Slisz, by devise.

2. That there had been no waiver of interest in that property by the surviving children of Helen Radka Slisz.

3. That one-half of Andrew's one-half interest in the Scranton Road property should descend to Rose Slisz and one-half of his one-half interest in the Scranton Road property should descend equally to the three surviving children of Helen Radka Slisz, namely, Mary Radka Jackie, Casimer Radka, and Leo Radka, by virtue of Section 2105.10, Revised Code.

Rose Slisz appealed from the decision of the referee setting forth her exceptions and assignments of error as follows:

I. That said final judgment of said referee before whom this action has been tried is not sustained by sufficient evidence.

II. That said judgment is contrary to law.

III. Irregularity in the proceedings and judgment of the referee in that the conclusions of law on the part of said referee do not comply with, and are not in accord with the findings of fact of said referee; whereby plaintiff was prevented from having a fair trial.

IV. Errors of law at the trial and excepted to by said plaintiff.

Mary Radka Jackie, Casimer Radka, and Leo Radka object to the exceptions and assignments of error filed by Rose Slisz and seek to have the decision of the referee sustained.

At the outset of the hearing before this court, Rose Slisz through her attorney, withdrew any claim of irregularity in

the proceedings before the referee and further withdrew any claim that she was prevented from having a fair trial. The court then proceeded to hear the appeal based upon Paragraphs I, II, and IV of her pleading setting forth the exceptions and assignments of error and limited Paragraph III to a contention that the conclusions of law by the referee are not in accord with the findings of fact by said referee.

No probative evidence was offered at any time to sustain the claim that waivers of succession rights under the so-called half-and-half statute were made by the surviving children of Helen Radka Slisz, and this finding of the referee is hereby affirmed.

Since Andrew Slisz died intestate, without issue, and with no surviving parents, his entire estate, real and personal, according to Section 2105.06, Revised Code, would descend to his surviving spouse, Rose Slisz, unless this succession was modified by another portion of the statute of descent and distribution, which, in this case, it is contended by the issue of Helen, his deceased first wife, is the so-called half-and-half statute, namely Section 2105.10, Revised Code.

Section 2105.10, Revised Code, *inter alia,* provides that when a relict of a deceased spouse dies intestate and without issue, possessed of identical real estate which came to such relict by devise, the issue of the deceased spouse from whom such property came shall be entitled to one-half of such identical real property, and the other one-half shall descend to the surviving spouse of the relict.

It is not denied that Andrew Slisz died intestate and without issue. But, Rose Slisz, the surviving spouse, contends that the real estate Andrew Slisz owned at the time of his death was not the identical property he received by devise from his first wife, Helen Radka Slisz. The Radka children claim that it is. And this is the determinative issue. In other words, is the real estate, or any part thereof, owned by Andrew Slisz at the time of his death, the identical real estate that came to him from his first wife?

Andrew and his wife Helen each owned an individual one-half interest in the Scranton Road property. This means that this property was held by each of them as tenants-in-common or joint tenants. Each had unity of possession with the other,

each had the right to occupy the whole in common with the other, and neither was able to determine his own specific and several share of the property. It was rather like each owning a share of co-mingled grain. Each had one-half of the whole, but neither could identify any portion of that whole as exactly his or her property . . . except that each owned a portion of all of it. Therefore, when Andrew Slisz became the sole owner of this property by virtue of Helen's devise, it was impossible to determine what specific portion of the property came from Helen and what specific portion of it was his prior to Helen's death. Just as it was impossible to determine what portion of the property each specifically owned prior to Helen Radka Slisz's death, it was likewise impossible to determine what portion of the property had been Andrew's and what portion came from Helen, after her death.

Rose Slisz contends that it is this very co-mingling, this very lack of ability to determine what was Helen's and what was Andrew's, that takes this property outside of Section 21-05.10 Revised Code, and places it solely within Section 2105.06, Revised Code, even before the transfer of one-half of the property to Rose. If the property that the Radka children now seek was in truth identical, Rose Slisz argues, it could have readily been identified throughout the life-time of Andrew, but obviously it could not have been so identified, anymore than a single kernel of grain could have been identified from the co-mingled mass, and therefore, the moment that the property became the sole property of Andrew, the former interest of Helen became further co-mingled with Andrew, thus forever losing the identity required to bring it within the so-called half-and-half statute.

Further, Rose Slisz avers, when Andrew transferred one-half of the Scranton Road property to his second wife, the additional co-mingling or fusing of interests into the new tenant-in-common finally and completely destroyed what little identity Helen's share of the property might have still existed, because Rose now owned one-half of whatever entity Andrew had had, and had unity of possession, had the right to occupy the whole in common, and was unable to determine her own specific and several share of the property.

The Radka children contend that the property is identical

because the title descriptions have described the same metes and bounds throughout all the successions in interest. The same title description used to transfer Helen Radka Slisz's share of the property, being "an undivided one-half interest," to Andrew Slisz upon the death of Helen, was used to transfer the "undivided one-half interest" from Andrew to Rose Slisz, and is being used in the instant matter to describe the "undivided one-half interest" sought to be brought under the provisions of Section 2105.10, Revised Code.

Use of this title description for the one-half of the real property that did not belong to Rose Slisz at the time of the death of Andrew Slisz, is clearly proof enough, contend the Radka children, that this is indeed the identical property devised to Andrew by Helen.

As intriguing and provocative as Rose Slisz's theory of the meaning of "identical property" as set forth in Section 2105.10 Revised Code, is, this court cannot accept any such meaning which is entirely exclusive of the "undivided one-half interest" in the Scranton Road property owned by Helen Radka Slisz before her death. There is no question that Helen had an undivided one-half interest in the house and land on Scranton Road. And that interest, being very real and tangible in the legal sense prior to her death, should have no less an import after her death and throughout these many years.

The fourth edition of Black's Legal Dictionary defines "identical" as being "exactly the same for all practical purposes" and the undivided one-half interest of Helen Radka Slisz impressed on this property by her prior ownership cannot be thrust off merely by succeeding transfers of the nature set forth by the facts in this case. What room of the house, what cranny of the lot, what flower in the garden did she own? She owned a share of them all, and this share still remains, for the purposes of the statute, as being exactly the same for all practical purposes.

This rule of law is followed by the courts throughout the existence of the so-called half-and-half statute.

*Babjak* v. *Ivanik*, 8 Ohio Law Abs. 364, which was decided in 1930 with almost the exact same set of facts as prevail in this case, held that the property retained its "identical" characteristics throughout a series of transfers and still came within

the purview of the predecessor to Section 2105.10, Revised Code (Section 8577, General Code).

In making this decision, the court said:

"We think that the proper disposition of this matter and the interests as they developed by reason of this complication of circumstances is that when the wife died, owning the whole tract, one-half of which having originally come to her by purchase, and one-half by descent from her husband, and which if not disposed of by her in her lifetime would go one-half to her sisters and one-half to the surviving sister of the first husband; that these different and respective undivided interests became thoroughly co-mingled in an admixture of the two undivided parts or interests, and that when a conveyance was made of an undivided one-half interest in the whole tract that it conveyed proportionate amounts of these two separate kinds of ownership, if they may be so designated."

The Babjak decision was considered as "being sound and right upon principle" in an opinion by the court in *Mihelcic* v. *Bomback* (1931), 9 Ohio Law Abs. 421, although in that case the court affirmed the lower court decision for the reason that no bill of exceptions had been properly filed by the appellant.

Considering the meaning of "identical property" in 1952, in *McMillan* v. *Krantz*, 94 Ohio App. 9, the court held:

"The term 'identical property', as used in Section 10503-5, General Code, (now R. C. 2105.10) and as applied to 'real estate,' means the corpus of the property and not the value or interest therein, and the corpus is determined by the legal title thereto."

The court said:

"Suppose under the cases cited under this section, involving personal property, one would inherit 50 United States bonds worth one hundred dollars each and then sell 25 of them. Could it be argued that the remaining 25 would not be the identical property inherited? Certainly not. So, likewise, suppose one inherited 160 acres of land and sold off 40 acres; could it be argued that under this section the 120 acres remaining would not be the identical real estate inherited? Again the answer is no. Certainly, not all of it would remain, but what did remain would be the identical property as far as the title thereto is concerned."

Again defining the meaning of "identical property," in *Miller et al., Admrs.,* v. *Mountcastle,* 161 Ohio St. 409, decided in 1954, the court held:

"Although property purchased or acquired from the proceeds of other property is not the 'identical * * *property' as such other property within the meaning of Section 10503-5, General Code (R. C. 2105.10), a strict literal meaning will not be ascribed to the words 'identical * * * property' as used in that statute.

"A mere change in the evidence of ownership of property does not require the conclusion that such property is not the identical property which it was before such change"

Thus, it can readily be seen from the above, no great wealth of authority, but all that is available on this subject, that a subsequent transfer of a part of the property received from the deceased spouse does not destroy the "identical property" requisite found in Section 2105.10, Revised Code. It can further be seen that it is the corpus or the title of the property that determines this identity, and the co-mingling of a new ownership of a part of the property does not destroy the "identical property" concept of the remaining portion of the property in the relict's name at the time of his decease.

In order to better understand the application of the law to this fact situation, we will consider the entire Scranton Road property to be divided into eighths. Helen and Andrew each acquired an undivided one-half interest in eight-eighths of the property. Upon Helen's death, four-eighths of the property, all that was previously owned by Helen, was devised to Andrew, thus he owned eight-eighths of the property with four-eighths of it coming from Helen.

Later, Andrew deeded four-eighths of the property to Rose. In this transaction, it must be presumed that Andrew deeded two-eighths of the property he acquired from Helen and two-eighths of the property he had previously owned. Thus, after this transaction and at the time of his death, the four-eighths interest in the property he owned at that time was made up of two-eighths he acquired from Helen and two-eighths he had previously owned.

Since the half-and-half statute only applies to the property acquired from the deceased spouse, it would not be applicable

to the two-eighths Andrew previously owned, and that share of the property would go by the statute of descent and distribution directly to Rose. The remaining two-eighths of the property, acquired by devise from Helen, would go under the half-and-half statute, therefore, with one-eighth descending to Rose and one-eighth descending to the Radka children.

It is therefore the decision of the court that one-half of the interest in the Scranton Road property that Andrew Slisz owned at the time of his death, or two eighths of the entire property, descends to Rose Slisz, surviving spouse, by virtue of Section 2105.06, Revised Code. The remaining one-half of the property that Andrew Slisz owned at the time of his death, or two-eighths of the entire property, comes within the provisions of Section 2105.10, Revised Code, and one-eighth of the entire property descends to Rose Slisz, surviving spouse, and one-eighth of the entire property descends to the Radka children.

The referee's finding, insofar as it conforms to this decision, shall stand affirmed and insofar as it is in conflict with the decision, it shall be reversed.

*Judgment accordingly.*